Good morning. Good morning, Your Honors. Michael Drake for Joe Flores. I will aspire to reserve two minutes for a moment. Okay, thank you. And I'll try to do my part. Joe Flores is doing mandatory life without parole based on the sort of opinion testimony that this Court, on AEDPA review and Briseno v. Scribner, held to be essentially useless in proving the specific intent prong of the gang enhancement. And I think that this case actually goes beyond the problems that were addressed in Briseno because the opinions here weren't just generic, they were unsupported all the way down. For example, Officer Mendez, the gang officer, testified and asserted that a gang member would have to deal with any degree of disrespect immediately, usually with violence. But he didn't give a single example. So you've got one claim basically on the sufficiency and then you're trying to raise an uncertified issue. That's right, Your Honor. That's right, Your Honor. So he said that disrespect would need to be dealt with immediately, but gave not a single example of actual violent retaliation by any bad boys member or any other gang member for that matter. He asserted that gang members carry themselves in a certain way that would get them recognized. But again, he didn't give a single example. And in fact, here it's effectively refuted by what happened to Joe Flores. They didn't exactly react to him as if he was a big scary gang member. Instead, they assaulted him. But essentially, okay, any time you deal with sufficiency, obviously it's not the easiest rock to push uphill for appellants. And so you have, we have to look at it with all inferences in favor of the verdict. So we have the gang enhance the officer that testified, but there's actually, there's other evidence in the record. So why don't you address that? Well, I think that the most striking thing about this case is the lack of evidence. There's no evidence that Joe Flores went to the party. It was a party open to the public. There was no evidence that he went to the party with gang members. He didn't go with a gun? Isn't that undisputed? He did go with a gun. I don't usually go with a gun to a party if I'm not, you know, thinking something might come up. And it's undisputed that he's a gang member, right? He doesn't dispute that. It was undisputed below, and I can't dispute it now. Okay. Right. He came, he's a gang member. He came with a gun. But California case law has said that having a weapon, there's, I think it's the Ochoa case where it was a juvenile. No, it was, I can't remember which one it was, but there's a case where a juvenile had a dirk or a dagger, and the expert testified, well, he's a gang member. He has a dirk and a dagger. He's prepared. Gang members prepare themselves for battle. That's not enough. You know, counsel, given that California states that gang membership coupled with the charge offense is not enough to demonstrate the specific intent necessary for the gang enhancement, I agree with you that this is not the most compelling transcript. I mean, it's weaker than many, many cases that we've seen. But we are at the review, and there's some pieces of record evidence that the government relies on to basically tie into the expert's testimony to bolster it. And the most significant piece of evidence for me is the fact that there's indication, and I think it was the shot caller on a phone call indicating that your client actually bragged about the shooting afterwards and thinks he's really tough or, I forget the exact words, thinks he's really bad for committing this crime. So I think that really does tie into the gang expert's testimony that bragging rights enhances the prestige of the individual gang member, and it creates fear in the community. Right? So how do you deal with that evidence? I think the government might have cited one or two other, albeit weaker, facts as well. But given that there's some evidence in the record that corroborates or bolsters the gang expert's testimony, isn't that enough to get this passed at the review in this case? I think if there were actual evidence, reliable evidence that Joe Flores had bragged about the shooting afterwards, that would be something I'd have to deal with. But that's a jury determination, right? So there is evidence in the record that he did brag about the shooting after the fact. So I disagree with the premise, first of all. What Mauricio Reyes, the shot caller, said was that he said that Flores wanted to brag. He didn't say that he did brag, and he didn't provide any supporting facts. So that's, I mean, the first thing is that he didn't actually say that Flores was bragging. He didn't say anything that attested to his having witnessed Flores brag. He said Flores wanted to brag. And so that's the first thing. And the second thing is that it's a legal determination whether that kind of evidence is reliable evidence. And it's not on AEDPA review. That evidence is not on AEDPA review because it's not something that the court of appeal relied upon. D-1 review is confined to the state court's actual decision and analysis. So that fact is on de novo review. And on de novo review, this court can certainly look at the categorical unreliability of that evidence, particularly given that Mauricio Reyes testified in court and was never asked about this supposedly important evidence. The prosecutor never relied on it in closing argument. The court of appeal never relied on it. And I don't think this court can reasonably rely on it either. Well, this court will do what it can't, will do what it will, but I don't see how a rational juror could rely on this evidence, having all this other evidence presented at trial and an expert purporting to provide reasoned opinions. To rely on that statement by Mauricio Reyes, who was never questioned about it in court, seems beyond the pale. I just want to also add that Mendez's key testimony was about this ultimate question, right? He testified that a gang member would benefit the gang and further its purposes by pulling a gun and shooting an unarmed party who assaulted him. Now, again, he provides not a single example to support that, and it's positively repudiated by the shot caller at trial who said that gang members would never do that. There's a deeper problem, though, which is that it's based on the idea that Flores had ordered the brawlers to stop fighting, and there is not a whit of evidence in the record. It's not even in the hypothetical. And there's controlling California Supreme Court case law that says opinion testimony is not entitled to any reliance if it's based on factual assumptions that lack record support. That's in Vong at the California 4th 1046. Mr. Drake, I have this Allaguer case from the California Supreme Court. It says, expert testimony that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was committed for the benefit of a criminal street gang within the meaning of 18622. Wasn't Reyes a late-arriving, it was like four years after the incident that he came to the police, made a deal? Doesn't he provide at least an inference, along with Mendez, the expert, that it was for the benefit of a gang? I don't think so, Your Honor, but I'm focusing on specific intent because I think that's an easier question for the court. I mean, I would grant that's an easier question for the court. And also, if there's a failure proof on the specific intent, the parties are agreed, and this court has effectively held, I think, in Emory v. Clark that the special circumstance would also suffer a failure proof. But let me ask you, with regard to specific intent, under AEDPA, we, reviewing court, we not only have to defer to the factual findings of the court, we have to defer to the legal findings of the court, don't we? Yes, that's right, Your Honor. Okay. So I'd urge the court to be careful with facts that are brought in that weren't relied on by the court of appeal in doing its D-1 analysis, but those, of course, can probably be considered under NOVA review. And I just want to say, however the court rules on this question, I think we all, at least Judge Wynne has expressed agreement, that the evidence of guilt on the gang enhancement and the special circumstance are very weak, so I'd urge the court to keep that in mind when it's considering the Darden claim, because all this gang stuff, all this unsupported gang testimony from this gang expert and the factual assumptions that both the prosecutor and the expert made spill over into the prejudice analysis under Darden, so I'd urge the court to invite the warden to respond to that. All right. I'll give you a minute for rebuttal. Thank you, Your Honor. Okay, thank you. Good morning. Good morning. May it please the court and counsel, Tony Estiville, Deputy Attorney General, on behalf of the respondent. As the court's already noted, the precise issue here is whether the California Court of Appeal reasonably applied Jackson when it relied in part on the gang expert's testimony to find that there was sufficient evidence to support the gang sentencing enhancement and special circumstance. But the sufficiency of the evidence didn't hinge solely on the gang expert's testimony, because the gang expert's testimony's role at trial was really to put in context the evidence that the jury already had before it that delayed the decision. I always find it helpful on a sufficiency of the evidence, obviously, because you're asking us to affirm, is tell me every piece of evidence that was there that a jury could have. Okay. That the jury could have. Give me your strongest case, because we have to look at your strongest case. Okay. What I'd like to do is use the hypothetical given to the gang expert. That's on 593 of the excerpt, because it has all of those facts in there, and I'm going to go ahead and give you the testimony that supported those hypothetical facts. Well, I want to know what evidence was in. Okay. We know what the gang expert said, and California allows the gang expert's testimony to come in. What other evidence was there in the trial that a jury could infer from? I mean, essentially, the expert gives the jury help in understanding the gang culture and what those things mean, but what were the pieces of evidence that were there? Right. What helped corroborate the gang expert's testimony about spreading fear and intimidation in the community, that's supported by David Reeves' testimony, where he testified that when he did go speak to the police about what happened to his brother, that he was afraid, and he was asked why was he afraid. He said he was afraid because a gang member shot his brother, and another one put a gun to his head. And then you also have Reyes, who's one of the shot callers of Bad Boys, who corroborates the gang expert's testimony with regard to how important fear and respect and intimidation is to how the gang operates. Reyes also testified about how Petitioner, when he entered into the fight and asked them to stop, that he was bringing the impacts of the gang with him, and that a gang member, one of their gang members, when he's disrespected, he needs to follow that up with some sort of quick action to remedy the... So Reyes is sort of his own expert witness. Well, he's a leader of their gang, so I think he's pretty well qualified to say... We have a police expert witness and we have a gang member expert witness. Well, he's the leader of their gang, so I think that's more lay testimony. In addition to that, we have Brian Peck, who knew that Petitioner was a gang member and he saw him at the party, and that lends credence to the gang expert's testimony that this shooting was attributed to the gang and as such that the gang would have its reputation enhanced. We also have... There was some testimony, and I'm not sure who it was from, that said something like, if a gang member enters a fray, they know that the other gang members present have their back and that there was testimony that he was not the only gang member there and that more than that he brought a gun and a few others brought a gun to the party. Yes, Your Honor, there were three people at the party who were armed and they were all members of Bad Boys. That's Petitioner, Michael Carrillo, David Reeves testified that he saw him with a gun, and then there was Nathan Maloney who pulled a gun on David Reeves after Petitioner shot Sam Reeves. Did anyone say why they brought a gun to the party? Nathan Maloney said he brought it for protection. And we believe that's gang-related as well. I mean, most people don't bring guns to the party. They did go through a number of the witnesses and ask them whether they brought a gun. They said no, the people who were non-gang members didn't bring a gun. They were the gang members who brought guns to the party. Thank you. Okay. Can you focus on the testimony, whether from Reyes or the expert, that ties the testimony to the evidence on the Petitioner floors in particular? With regard to the – this is a question of specific intent on floors. Right, and I did pull that up when you were asking earlier. That was from Maloney's recorded statement. And that's on 791 of the excerpts of record. He talks about how he, at his trial, everyone had come and testified and said that Petitioner was the one who committed the crime. And then Reyes said, yeah, he bragged about being the killer. He thought it was great. And, of course, Maloney and Reyes didn't think it was great. They thought he was a coward for doing that. But nonetheless, Petitioner was bragging about it afterwards. And that goes to show that he did have the specific intent to increase his reputation. Was there a recording of the bragging, or was it just verbal, or was there a recording? It was just – Who did he brag to? He – we have it from Maloney and Reyes that he bragged about it to their fellow gang members. Maloney and Reyes were talking to each other about Flores. Right, that's correct. What was the hearsay exception to that? It goes to reputation, and that's one of the exceptions. There's an exception to the hearsay rule, reputation? Reputation, yes. And, again, well, on a Jackson review, it's not really material whether. It's not, you know, the miscibility of evidence issue. It's whether there's sufficient evidence, and that includes all of the evidence. Well, was there an objection to that? No, there was no objection to the recorded statements. It's in the record. The jury can consider it. All right, so it's not really a hearsay exception. It's just in the record. If someone doesn't object, it becomes – That's true as well. All right. One of the other compelling pieces of evidence tying the expert testimony directly to Flores. Right. The next piece was about the gang member who commits a crime. He's going to expect backup from his fellow gang members. That was – the court of appeal used that to determine that the evidence was sufficient on the inassociation element of the first prong, and that was corroborated by the fact that Nathan Maloney did come to Petitioner's Rescue and held a gun on David Reeves and, according to Flores, picked him up and got him out of that situation after he had shot Sam Reeves. So that's another area where the gang expert's testimony was corroborated by lay witnesses. I believe that's all. That goes through pretty much all of the facts that were in the gang expert's testimony, and that supported his opinion. And as the court said and the California Supreme Court said in Al Balar, that the gang expert's testimony alone can be sufficient to support the gang sentencing enhancement, and it can also support an inference that there was intent to aid the criminal conduct of gang members. It can, although it's got to be tethered to some record tying it to the petitioner's record. Right. And here – sorry. The problem with gang experts is that there tends to be very generalized testimony about the gang and their reputation and how committing crimes could sow fear in the community. It's very general and sometimes boring on the speculative. That's why there's specific intent requirement. And you've got a situation here where gang members went to a party. The petitioner was armed. He got knocked out and even told Reyes, who cooperated, that it wasn't something that was planned. He got knocked out. He woke up. He pretty much reacted to the situation. And so, you know, that's why I'm focusing on specific intent type of evidence that ties the gang expert's testimony to what Flores said or what he did or other indications of what his state of mind was. And since this is on ETPA review, I think the petitioner has a tough road to hoe, but overall it's not the most compelling case if it were de novo. That's true. And, again, on the specific intent, what we have is the bragging that Maloney and Reyes talked about. That shows that that was petitioner's intent. And we don't typically have that in most cases because you don't have the time lapse. In this case, there were several years passed between the crime and when petitioner was. Ms. Estovil, I want to ask you a legal question. If a judgment is stayed, is it never enforced? The judgment on the additional ten years, the enhancement, the way I understand the statute, it was stayed by the district court and the court of appeals didn't touch that. Has he suffered any harm, he, the defendant, from a stayed judgment? No, not currently. But if there were something were to happen to the life without the possibility of parole, the special circumstance, then the gang sentencing enhancement, the ten years, could then become operable. So it's not ripe for review? I believe he still may suffer consequences from that. So that's not an argument that we've made. He may. He may. He certainly doesn't now because it's included in the license. So is this based on the fact that the evidence on the gang enhancement and the evidence on the special circumstances that led to the LWOP sentence, that's the same evidence? That's what the trial court must have built in order to stay in under 654 because that's the standard. That it's part of the same course of conduct. Thank you. Thank you, Your Honors. Now I see where you're going with that order, with the ripeness question. So we didn't get it, I think, in our briefing. And neither party really addressed the heart of that issue. Yeah, I didn't. I struggled to understand. We actually spoke about it, and we struggled to understand. So this is the only opportunity he has to challenge that, right? Because if he doesn't do it now, it will happen down the line, and then he won't be able to have a habeas then. Right, exactly. Your answer is right. It's right, right, for that reason. Three things. One, about the bragging. Again, if you paid close attention to that testimony, I don't think it's even evidence that he was bragging. And second, on de novo review, which that fact would be reviewed under, I think you can categorically reject it as unreliable, out-of-court hearsay, and particularly egregious, given how inflammatory it is. Second.  I don't, Your Honor. Egregious. It's in the record. And I actually pulled up the transcript because you were saying, well, that's not bragging. And I thought it was clearly bragging. And the testimony is like, he's running around, he told everybody what he did. He told everybody. Everybody knows. He thinks he's bad for that fool. He wanted to go brag about being a killer. He ain't no killer. That's a coward. I mean, that sounds like bragging. Well, this is six years after. And if he hadn't said, if he hadn't used the word bragging, you'd just say he's telling everyone. Well, why is he telling everyone? Because who knows. But anyway, I'll just leave that with you. And then finally, not sorry, not finally. Two more things, if I may. Well, you've got to make it pretty finally because you're running out of time. Okay. Let me make one final point. So this is critical. The gang expert's testimony about that hypothetical that counsel was mentioning, it can't even be traced to the gang's primary activities because, despite what I mistakenly wrote in my reply brief at page four, murder is not among the gang's primary activities. So it's completely the opposite of cases like Weddington or Gardili, where the expert at least had some basis for opining that the underlying conduct, the charged conduct, related back to a signature or a common practice of the gang. All right. Thank you both for your arguments. This matter will stand submitted.
judges: Callahan, Nguyen, Pratt